FILED
DEC 20 2013
CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| EUGENE H. MATHISON, | \* | CIV. 12-4156 |
| Petitioner, | \* | |
| | \* | MEMORANDUM OPINION |
| - vs - | \* | AND ORDER |
| DAVID BERKEBILE, Warden, | \* | |
| Respondent. | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Eugene H. Mathison, by his counsel of record, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 raising concerns as to whether his conviction and sentence for both money laundering and fraud is valid under the holding of *United States v. Santos*, 553 U.S. 507 (2008). Doc. 1. The Respondent filed a Motion to Dismiss arguing that this Court has no jurisdiction over Mathison's habeas petition because it should have been filed in the District of Colorado where Mathison is incarcerated and his custodian is located. Doc. 6. This Court refused to grant Respondent's motion to stay a response on the merits reasoning that even if the Court were to find in favor of the Respondent on the issue of the correct district to bring this action, the Court could still consider it to be in the interest of justice to transfer the action pursuant to 28 U.S.C. § 1406(a) or to continue the appointment of counsel to pursue an appropriate remedy, and wanted input from the Government on the merits of the *Santos* claim. In its subsequent response Respondent argues that Mathison has failed to make a showing that he is entitled to raise the *Santos* issue on collateral review. Doc. 14. With regard to the merits of Mathison's claim of being convicted of conduct the law does not make criminal, the Respondent merely states Mathison's claim is "a point the Government does not concede." Doc. 14, p. 17. The matter has now been fully briefed and the Court has reviewed the voluminous trial record.

## PROCEDURAL BACKGROUND

*Indictment and Trial*

In 1996, the Government in a 25-page Second Superseding Indictment charged Eugene Mathison and three others, Robert E. Holmes, Perry Gobel, and Dean Chambers, with numerous counts of conspiracy (18 U.S.C. § 371), mail fraud (18 U.S.C. § 1341), wire fraud (18 U.S.C. § 1343), and money laundering (18 U.S.C. §§ 1956(a)(1), and 1957(a)). *United States v. Mathison, et al,* 4:96-cr-40048 (Doc. 144). The Government alleged that Mathison was operating a Ponzi scheme and defrauded family, friends, and acquaintances of over $1 million. Included within this Ponzi scheme were four different investment groups: Northern States Investment Group, GoldStar Investment Group, Universal Investment Group, and Perob Investment Group.

Each of the money laundering counts required the Government to prove that Mathison knew that the money utilized to conduct a financial transaction represented the "proceeds" of some form of unlawful activity. In the definition portion of Instruction No. 31 the Court defined proceeds as follows:

> The term "proceeds" means any property, or any interest in property, that someone acquires or retains as a result of the commission of the mail fraud or wire fraud. If someone commits a fraud and receives cash or a check and uses the cash or check to buy a cashier's check, the cash or check received is proceeds and the cashier's check is still proceeds of the crime. The government is not required to trace the property it alleges to be proceeds of mail fraud or wire fraud to a particular underlying offense. It is sufficient if the government proves that the property was the proceeds of mail fraud or wire fraud generally.
>
> The government need not prove that all of the property involved in the transaction was the proceeds of mail fraud or wire fraud. It is sufficient if the government proves that at least part of the property represents such proceeds.

Mathison, who represented himself at trial, did not object to Instruction No. 31. In addition, none of the attorneys representing Mathison's co-defendants objected to this instruction.

A jury trial commenced on May 20, 1997, and on June 9, 1997, a jury convicted Mathison of thirty-eight counts of mail fraud, five counts of wire fraud, fifteen counts of money laundering in violation of 18 U.S.C. §§ 1956(a)(1), one count of conspiracy to commit mail fraud, wire fraud, and money laundering, and two counts of engaging in monetary transactions in property derived from

unspecified unlawful activity in violation of 18 U.S.C. § 1957 (Doc. 378). By a judgment dated September 12, 1997, Mathison was sentenced to a total term of imprisonment of 246 months.[1]

*Post-trial*

Mathison appealed from his conviction and sentence to the United States Court of Appeals for the Eighth Circuit, but did not raise any issue regarding the definition of proceeds under the money-laundering statutes. *See United States v Mathison*, 157 F.3d 541 (8th Cir. 1998).[2] Mathison's convictions and sentence were affirmed, and the Supreme Court denied Mathison's petition for a writ of certiorari on January 11, 1999.

On April 3, 2000, Mathison filed his first Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. CIV. 00-4055. In his initial and initial amended Section 2255 motion, Mathison did not raise any issue regarding the definition of proceeds. District Judge Richard H. Battey denied the Section 2255 motion after finding it was barred by the one-year state of limitations. The Eighth Circuit, on March 21, 2001, denied Mathison's application for a certificate of appealability and dismissed his appeal from the denial of his Section 2255 motion.

---

[1] The judgment specified that Mathison would be imprisoned 235 months on Counts 1 through 61, all such terms of imprisonment to run concurrently, and that as to each of Counts 42, 43, 44, 49 50, 52, and 57 through 61, Mathison was to be imprisoned for an additional term of one month pursuant to 18 U.S.C. § 3147, each one-month sentence enhancement to run consecutively to each other enhancement and consecutively to the 235 months of imprisonment imposed on counts 1 through 61. *United States v. Mathison, et al*, 4:96-cr-40048 (Doc. 470).

[2] In his appeal Mathison raised the following issues: (1) judicial bias; (2) error in denying motions to suppress evidence; (3) error in denying *Franks* hearing; (4) deficient supporting affidavit for search warrant; (5) lack of specificity in search warrant; (6) error in refusing to force the government to allow him to examine seized property; (6) error in refusing to grant immunity to a witness; (6) sentencing errors; (7) the sentence constitutes cruel and unusual punishment; and (8) ineffective assistance of counsel in pretrial matters.

# I.

# WHETHER MATHISON HAS PRESENTED A CLAIM THAT CAN BE PRESENTED BY UTILIZING THE SAVINGS CLAUSE OF § 2255 AND FILING A PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241?

*United States v. Santos*

*United States v. Santos*, 553 U.S. 507 (2008), was decided on June 2, 2008.[3] The *Santos* case involved an illegal lottery, in which runners took commissions between 15% and 25% from the bets they gathered, and some of the rest of the money was paid as salary to collectors and to the winning gamblers. Based on the payments to runners, collectors, and winners, Santos, who ran the lottery, was convicted of violating the federal money-laundering statute, 18 U.S.C. § 1956. Another defendant pleaded guilty to conspiracy to launder money, based on his receipt of salary. The Seventh Circuit affirmed these convictions. On collateral review, the district court ruled that under intervening Circuit precedent in the Seventh Circuit which interpreted the word "proceeds" in the federal money-laundering statute as applying only to transactions involving criminal profits, not criminal receipts, there was no evidence that the transactions on which the money-laundering convictions were based involved lottery profits. The district court vacated those convictions, and the Seventh Circuit affirmed the order of the district court. In a plurality opinion, the Supreme Court in *Santos* affirmed the Seventh Circuit.

Justice Scalia delivered the plurality opinion in which Justice Souter and Justice Ginsburg joined, and in which Justice Thomas joined as to all but Part IV.[4] The plurality opinion observed that

---

[3]Respondent states: "Mathison's first attempt to raise the *Santos* issue, in a habeas filed in January, 2008," was rejected by the Colorado district court and the Tenth Circuit. Doc. 14, p. 15. At this time, however, the Supreme Court had not decided the *Santos* case.

[4]Part IV of the opinion written by Justice Scalia criticizes Justice Stevens' opinion for expressing the view that the rule of lenity applied to the case at hand because there is no legislative history reflecting any legislator's belief concerning the application of the money-laundering statute to lottery operators, and for Justice Stevens distinguishing the case at hand from cases involving organized crime or the sale of contraband with regard to the application of the rule of lenity. *Santos*, 553 U.S. at 521-522.

since the federal money-laundering statute did not define "proceeds"[5] the term could mean either "receipts" or "profits." The plurality opinion also observed that Congress has defined "proceeds" in various criminal provisions, sometimes to mean "receipts" and sometimes to mean "profits." The plurality opinion opined that either definition made sense in the context of the money-laundering statute. *Santos*, 553 U.S. at 511-512.

The plurality opinion concluded that "[b]ecause the 'profits' definition of 'proceeds' is always more defendant-friendly than the 'receipts' definition, the rule of lenity dictates that it should be adopted." *Santos*, 553 U.S. at 514. The plurality opinion reasoned that if the proceeds were defined as receipts, the statute criminalizing illegal lotteries would merge with the money-laundering statute. The plurality opinion further opined that the merger problem would apply to a host of predicate crimes, "depend[ing] on the manner and timing of payment for the expenses associated with the commission of the crime." *Santos*, 553 U.S. at 516. The plurality opinion specifically noted: "And any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares." *Id.* The plurality opinion states that an interpretation of "proceeds" to mean "profits" would eliminate the merger problem.

In his concurring opinion, Justice Stevens opined that "Congress could have provided that the term 'proceeds' shall have one meaning when referring to some specified unlawful activities and a different meaning when referring to others." *Santos*, 553 U.S. at 525. Justice Stevens observed that the legislative history of § 1956 makes it clear that Congress intended the term "proceeds" to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving the sale of contraband, and opined that the rule of lenity need not apply to those types of activities. *Santos*, 553 U.S. at 525-526 n.3. Justice Stevens in his opinion also expressed concern over the merger problem and stated: "Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are

---

[5]After *Santos* was decided Congress in 2009 amended § 1956 to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." That amendment, however, would not apply retroactively to Mathison's case.

5

substantially more severe than those for the underlying offense of operating a gambling business." *Santos*, 553 U.S. at 527. Justice Stevens further opined: "The revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." 553 U.S. at 528.

When a fragmented Supreme Court, such as the Supreme Court in the *Santos* decision, decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Supreme Court may be viewed as the position taken by those members who concurred in the judgments on the narrowest grounds. *Marks v. United States*, 430 U.S. 188, 193 (1977); *United States v. Ollie*, 442 F.3d 1135, 1142 (8th Cir. 2006). In the *Santos* decision, Justice Stevens' opinion resolved the case on the narrowest grounds and sets forth the Court's holding.

The Eighth Circuit first addressed the *Santos* decision in *United States v. Spencer*, 592 F.3d 866 (8th Cir. 2010), a case in which one of the defendants was convicted of conspiracy to distribute cocaine, attempted possession with intent to distribute cocaine, and money laundering. In the *Spencer* case, the Eighth Circuit stated: "Santos holds that, in the context of a gambling organization, the word "proceeds" in the money-laundering statute refers to profit, not gross revenue." 592 F.3d at 879. The Eighth Circuit held in *Spencer* that *Santos* does not apply in the drug context. 592 F.3d at 879-880; *see also United States v. Davis*, 690 F.3d 912, 921 n.3 (8th Cir. 2012), *cert. granted, judgment vacated on other grounds,* 133 S.Ct. 2852 (2013). In *United States v. Rubashkin*, the Government unsuccessfully argued that under *Spencer* the *Santos* holding was limited to illegal gambling cases. 655 F.3d 849, 865 (8th Cir. 2011).[6] In *Rubashkin* the Eighth Circuit acknowledged that Courts of Appeals in *Garland v. Roy*, 615 F.3d 391 (5th Cir. 2010), and *United States v. Van Alstyne*, 584 F.3d 803 (9th Cir. 2009), had held the merger problem recognized by Justice Stevens' opinion in *Santos* could exist in pyramid and Ponzi scheme cases because the same transactions gave

---

[6]The Eighth Circuit in *Rubashkin,* 655 F.3d at 849, explained:
> The government's argument limiting *Santos* to illegal gambling cases is supported by a footnote in *United States v. Spencer*, 592 F.3d 866, 879 n. 4 (8th Cir.2010). That footnote read alone implies that *Santos* only applies to illegal gambling cases, but read in the context of the opinion it merely indicated that *Santos* "does not apply in the drug context." Id. at 879–80. *Spencer* involved drug trafficking, a type of activity which the controlling opinion in *Santos* stated was always separately punishable from money laundering.

6

rise to both the underlying fraud charges and those for money laundering. The Eighth Circuit distinguished those cases from that of the defendant in *Rubashkin* because the money laundering charges in his case were not predicated solely on his bank fraud charges, but were also predicated on charges of making false statements and reports to a bank in violation of 18 U.S.C. § 1014. *Rubashkin*, 655 F.3d at 865-866.

*Application of Santos on Collateral Review*

Although immediately following the issuance of the decision in *United States v. Santos*, 553 U.S. 507 (2008), numerous district courts concluded that the new definition of proceeds in the money-laundering statues was not retroactively applicable, *see Wooten v. Cauley*, 677 F.3d 303, 308 (6th Cir. 2012), several Circuit Courts have subsequently ruled that *Santos* is retroactively applicable. These rulings are based on the new interpretation of the definition of "proceeds" in § 1956 being a substantive change in the law which places the burden on the prosecution to prove the use of profits, not mere gross receipts, in money laundering cases. *See Wooten v. Cauley*, 677 F.3d at 308. (abrogating *Haukedahl v. United States*, 2009 WL 961157 (N. D. Ohio, April 7, 2009)). *See also Bousley v. United States*, 523 U.S. 614, 620 (1998) (the rule in *Teague v. Lane*, 489 U.S. 288 (1989), that new constitutional rules of criminal procedure are generally inapplicable to cases which have become final before the announcement of the new rules are announced is not applicable to a situation in which the Supreme Court decides the meaning of a criminal statute enacted by Congress).

In *Reyes-Requena v. United States*, 243 F.3d 893 (5th Cir. 2001), the Fifth Circuit Court of Appeals considered what mechanism a federal prisoner should utilize to bring a claim based on *Bailey v. United States*, 516 U.S. 137 (1995). *Bailey* holds that a conviction under 18 U.S.C. § 924(c)(1), which criminalizes the "use" of a firearm during and in relation to drug trafficking offense, requires evidence sufficient to show active employment of a firearm by a defendant. The Fifth Circuit in *Reyes-Requena* was confronted with orders from two district courts, with each district court concluding that the other properly had jurisdiction over the *Bailey* post-conviction claim. One district court concluded that the federal prisoner needed to file a successive § 2255 motion and the other district court concluded that the federal prisoner must file claim under § 2241. The Fifth Circuit concluded that the Supreme Court in *Bailey* conducted a routine statutory analysis, not a new rule

7

of Constitutional law, and that the *Bailey* claim, therefore, did not fall within the rubric of successive § 2255 motions. Reyes-Requena, 243 F.3d at 900.

The Fifth Circuit in *Reyes-Requena* then considered whether the *Bailey* claim could be considered under 28 U.S.C. § 2241 by utilizing the savings clause of 28 U.S.C. § 2255. The savings clause, codified at 28 U.S.C. § 2255(e), provides:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention. [7]

After considering the statutory language, cases interpreting the same, and the fact that the provision under 28 U.S.C. § 2255 allowing for successive habeas review "does not provide any avenue through which a petitioner could rely on an intervening Court decision based on the substantive reach of a federal statute," 243 F.3d at 903, the Fifth Circuit in *Reyes-Requena* concluded:

> [T]he savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

*Reyes-Requena*, 243 F.3d at 904.

The Eighth Circuit has recognized that although a federal inmate generally must challenge a conviction or sentence through a § 2255 motion, the savings clause governing motions to vacate, set aside, or correct a sentence permits a prisoner to bring a habeas petition under § 2241 if the remedy available in a motion to vacate is inadequate or ineffective to test the legality of a conviction or a sentence. *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010); *United States v. Lurie*, 207 F.3d 1075, 1077 (8th Cir. 2000). The prisoner has the burden of establishing that the remedy under Section 2255 would be inadequate or ineffective. *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003).

---

[7] The Supreme Court in *United States v. Hayman*, 342 U.S. 205, 223 (1952), also observed that habeas corpus writs are available when § 2255 is inadequate or ineffective.

8

In *Abdullah v. Hedrick*, 392 F.3d 957, 960 (8th Cir. 2004), a case cited by Respondent, a federal prisoner unsuccessfully attempted to utilize the savings clause of § 2255 and a petition for a writ of habeas corpus under 28 U.S.C. § 2241 to assert a *Bailey* challenge to a conviction arising from a plea to the use of a firearm under 18 U.S.C. § 2241. The Eighth Circuit looked to the Fourth and Fifth Circuits for guidance as to when § 2255 may be inadequate or ineffective to test the legality of a conviction. *Abdullah v. Hedrick*, 392 F.3d at 962 (citing *In re Jones*, 226 F.3d 328 (4th Cir. 2000); and *Reyes–Requena v. United States*, 243 F.3d 893 (5th Cir. 2001)). These cases allow the use of § 2241 through the savings clause of § 2255 when a petitioner asserts a viable claim of actual innocence, but the petitioner had not had an earlier procedural opportunity to raise the claim. As was previously discussed, in *Reyes–Requena v. United States*, 243 F.3d at 904, the Fifth Circuit held that the savings clause of 28 U.S.C. § 2255 applies to a claim (1) if the claim is based on a retroactively applicable Supreme Court decision which establishes that a petitioner may have been convicted of a nonexistent offense and (2) if the claim was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

In *Abdullah v. Hedrick*, the prisoner's first § 2255 motion was pending at the time the Supreme Court announced its decision in *Bailey*, but the prisoner's counsel failed to amend the § 2255 motion, and the Eighth Circuit held on appeal from the denial of the initial § 2255 motion that the prisoner had defaulted the *Bailey* argument by not properly presenting the argument to the district court in his initial § 2255 motion. *Abdullah v. Hedrick*, 392 F.3d at 959. The Eighth Circuit concluded that the prisoner in *Abdullah v. Hedrick* had an unobstructed procedural opportunity to present his claim. 392 F.3d at 963. In addition, the Eighth Circuit noted: "To make an actual innocence showing, Abdullah would have to prove 'not only actual innocence of the gun charge but also of the more serious charges the government dismissed in exchange for the guilty plea.' " 392 F.3d at 959 n.2. Mathison's case does not present such barriers to savings clause relief.

In bringing a claim based on *Santos,* Mathison has presented a claim based on a retroactively applicable Supreme Court decision which establishes that he may have been convicted of a nonexistent offense. In addition, he has presented a claim that was foreclosed by the circuit law of the Eighth Circuit at the time when his claim should have been raised in his trial, appeal, or first § 2255 motion. His petition for certiorari from the appeal of his conviction was denied more than

9

nine years before the Supreme Court issued its decision in *Santos*.

In *United States v. Williams*, the Eighth Circuit acknowledged that under its case law prior to the Supreme Court handing down its decision in *Santos* "proceeds" was defined as "anything that is the gross receipt of illegal activity." 605 F.3d 556, 567 (8th Cir. 2010) (citing *United States v. Simmons*, 154 F.3d 765, 770 (8th Cir.1998) (noting that while other circuits have defined the term "proceeds" as alternatively gross revenue or profit, "[w]e think the better view is the one that defines proceeds as the gross receipts of the illegal activity"). Although *Santos* is retroactively applicable, Mathison's *Santos* claim was foreclosed by Eighth Circuit law at the time of petitioner's trial, appeal, and first § 2255 motion. Mathison presents a case in which he was convicted of money laundering in violation of 18 U.S.C. § 1956 involving funds transferred by wire and paid to his codefendants, coconspirators, and associates, Perry Gobel, Robert Holmes, Robert Holmes'wife, and Dean Chambers.[8] Counts 54, 55, 56, 57 and 58. In rejecting proceeds as being mere receipts, the *Santos* opinion observed, "And any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares." *Santos*, 553 U.S. at 515. This is what occurred in some of the counts of money laundering for which Mathison was convicted. Since Mathison's § 2241 petition presents viable *Santos* challenges to a number of his money laundering convictions, Mathison presents a savings clause case under 28 U.S.C. § 2255(e) which can be brought under § 2241. The issue becomes whether Mathison can bring his claim in this district court.

*Mathison's Assertion of the Application of Santos to his Case*

*Santos* was announced on June 2, 2008. In September of 2008, Mathison, while incarcerated at the Federal Prison Camp in Florence, Colorado, filed a *pro se* petition, pursuant to 28 U.S.C. § 2241, and citing to 28 U.S.C. § 2255(e), challenged the validity of his money laundering conviction under the law as set forth in *Santos*. See attachment 1. The application was dismissed because the district court, construing the action as a challenge to Mathison's South Dakota conviction, concluded

---

[8]The Court notes that Dean Chambers, unlike the other associates, testified that he cashed all the checks which were made payable to him and gave the cash to Mathison. Trial Transcript, p. 1066.

10

that Mathison had "an adequate and effective remedy pursuant to 28 U.S.C. § 2255 in the United States District Court for the District of South Dakota." *See Eugene H. Mathison v. Ron Wiley*, No. 08-CV-2005, 2008 WL 4569864 (D. Colo. October 1, 2008). In the opposition to Mathison's motion for release pending review, the predecessor to the current respondent represented to the Tenth Circuit: "Mathison commenced this action under 28 U.S.C. § 2241. As the court correctly observed, however, because this action challenges the validity of the original conviction and sentence, it is properly brought pursuant to § 2255 in the district in which the conviction and sentence were imposed." *See* attachment 2. On March 26, 2009, the United States Court of Appeals for the Tenth Circuit affirmed the order denying Mathison's application for under 28 U.S.C. § 2241. *Mathison v. Wiley,* 318 Fed. Appx. 650, 2009 WL 784257 (10th Cir. March 26, 2009). *See* Attachment 3. In May of 2009, Mathison then filed a Petition for Writ of Audita Querela challenging his money laundering convictions under *Santos*. This Court denied the Petition for Writ of Audita Querela, determining that a "writ of audita querela cannot be invoked simply to enable a defendant to file what is in effect a § 2255 motion without complying with the rules governing such motions, or to file a second § 2255 without the requisite permission of the Court of Appeals." *United States v. Mathison,* 2010 WL 2932957 at *4 (D.S.D. July 23, 2010). Because this Court believed the "application of *United States v. Santos* has evolved and expanded," this Court later appointed counsel to represent Mathison.

II.

## WHETHER MATHISON'S 2241 HABEAS PETITION MUST BE FILED IN COLORADO, DEPRIVING THIS COURT OF JURISDICTION?

Respondent contends this Court has no jurisdiction over Mathison's Section 2241 habeas petition because it should have been filed in the District of Colorado where he is incarcerated and his custodian is located. As the preceding discussion points out, Mathison promptly filed a 2241 habeas petition in the District of Colorado where he is incarcerated and his custodian is located, but that district court denied the petition after determining that Mathison needed to file a petition challenging his conviction in the District of South Dakota. Respondent's predecessor supported that determination and did not set forth facts disputing that determination in his opposition to Mathison's

motion for release pending review. Respondent cites to *United States v. Chappel*, 208 F.3d 1069, 1070 (8th Cir. 2000), and *Cox v. Federal Bureau of Prisons*, 643 F.2d 534, 536 n. 3 (8th Cir. 1981), as authority for his position that the Section 2241 petition must be filed in the district of incarceration. These cases, however, dealt with the execution of a prisoner's sentence, not the validity of his conviction.

Respondent also relies upon *Rumsfeld v. Padilla*, 542 U.S. 426, 444 (2004), for his position that jurisdiction for a habeas petition lies only in the district of confinement. In *Rumsfeld v. Padilla*, Padilla, a United States citizen, was brought to New York for detention in connection with a grand jury investigation in the Southern District of New York concerning the September 11, 2001 al Qaeda terrorist attacks. After Padilla was designated by the President to be an "enemy combatant" he was moved to a Navy brig in Charleston, South Carolina. Padilla's counsel filed in the Southern District of New York a habeas petition under 28 U.S.C. § 2241, alleging that Padilla's military detention violated the Constitution, and naming as respondents, the President, the Secretary of Defense, and the brig's commander. The Supreme Court in determining whether the Southern District of New York had jurisdiction addressed two questions: "First, who is the proper respondent to that petition? and second, does the Southern District have jurisdiction over him or her?" 542 U.S. at 434.

Because 28 U.S.C. § 2242[9] and 28 U.S.C. § 2243[10] provide that the proper respondent in a habeas petition is the person having custody of the person detained, the Supreme Court held that in "core challenges," habeas challenges to present physical confinement, the default rule makes the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official, the proper respondent. 542 U.S. at 435.

---

[9] 28 U.S.C. § 2242 provides in relevant part:
> Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf.
>
> It shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known.
>
> . . . .

[10] 28 U.S.C. § 2243 provides in relevant part: "The writ, or order to show cause shall be directed to the person having custody of the person detained."

With regard to the question of whether the district court has jurisdiction over a respondent, the Supreme Court in *Rumsfeld v. Padilla* examined the language in 28 U.S.C. § 2241(a) stating that writs of habeas corpus may be granted by district courts "within their respective jurisdictions." The Supreme Court in *Padilla* relied upon its interpretation of this language in an earlier case, *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 495 (1973), to require "nothing more than that the court issuing the writ have jurisdiction over the custodian." *Padilla*, 542 U.S. at 42. The Supreme Court observed that the "traditional rule has always been that the Great Writ is 'issuable only in the district of confinement.'" *Id.* (quoting *Carbo v. United States*, 364 U.S. 611, 617 (1961) (writ of habeas corpus ad prosequendum suffers no geographical limitations on its use). The Supreme Court in *Padilla* also relied on the language of 28 U.S.C. § 2241 that an application for habeas relief to the Supreme Court or a circuit judge state the reasons for not petitioning "the district court of the district in which the applicant is held." 542 U.S. at 442.

The Supreme Court in *Padilla* also noted that Congress has fashioned explicit exceptions to the "district of confinement" rule when exceptions were to exist. Interestingly, the Court specifically noted that "until Congress directed federal criminal prisoners to file certain postconviction petitions in the sentencing courts by adding § 2255 to the habeas statute, federal prisoners could litigate such collateral attacks only in the district of confinement." 542 U.S. at 443. None of the cases cited by the *Padilla* decision in support of the "district of confinement" rule involved cases falling under the savings clause in 28 U.S.C. § 2255(e). This Court will assume for purposes of this opinion, however, that the "district of confinement" rule generally applies to savings clause cases brought pursuant to 28 U.S.C. § 2241.[11]

---

[11]All but two of the cases Mathison cites as support for his position that because his challenge concerns the validity of his conviction and sentence, not the execution of his sentence, this Court does not need to have jurisdiction over his custodian, were decided before *Padilla*. One case decided after *Padilla* involved the respondent requesting a transfer to the district where the petitioner was tried, convicted and sentenced. In addition, the petitioner had been released from BOP custody at the time the magistrate considered his § 2241 petition. *See Key v. O'Brien*, 2011 WL 3648238 (N.D.W.Va. July 19, 2011). In the other case, the petition was filed in the district of confinement, and the district court transferred it to the sentencing court. *See Hill v. Daniels*, 2005 WL 2249858 (D.Or. September 14, 2005).

13

The majority opinion in *Padilla* notes: "The word 'jurisdiction,' of course, is capable of different interpretations. We use it in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court." 542 U.S. at 434 n.7. Also, in a concurring opinion in *Padilla*, Justice Kennedy, joined by Justice O'Connor, stated that "the proper location of a habeas petition is best understood as a question of personal jurisdiction or venue." 542 U.S. at 451 (*citing Moore v. Olson*, 368 F.3d 757, 759-760 (C.A.7th Cir. 2004) (suggesting that the territorial-jurisdiction rule is a venue rule, and the immediate-custodian rule is a personal-jurisdiction rule)). The concurring opinion observed that "[b]ecause the immediate-custodian and territorial-jurisdiction rules are like personal-jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be waived by the Government." The concurring opinion further advised:

> The precise question of how best to characterize the statutory direction respecting where the action must be filed need not be resolved with finality in this case. Here there has been no waiver by the Government; there is no established exception to the immediate-custodian rule or to the rule that the action must be brought in the district court with authority over the territory in question; and there is no need to consider some further exception to protect the integrity of the writ or the rights of the person detained.

*Padilla*, 542 U.S. at 453 (Kennedy, J., concurring).

The Eighth Circuit Court of Appeals has held that the failure to file a § 2241 petition in the district where a prisoner is confined or where the BOP has a central or regional office is a defect that does not deprive the district court of subject matter jurisdiction. *See Mathena v. United States*, 577 F.3d 943, 946 n.3 (8th Cir. 2009). In the *Mathena* case the Eighth Circuit held that the government waived any objection to the petitioner not bringing his § 2241 petition in the district of confinement by not raising the issue. *Id.*

Mathison argues that in its brief the government only challenges this Court's subject matter jurisdiction over this petition, and, in fact, denies that it addresses the issue of venue. As such, Mathison argues, Warden Berkebile and the United States should be deemed to have waived any challenge to venue or personal jurisdiction in this case. Doc. 16, p. 6. Although the government's brief does not articulate the distinction between subject matter jurisdiction and in personam

14

jurisdiction,[12] considering the motion and briefs as a whole, the Court does not find that the Government waived any habeas or in personam jurisdiction claim. The Court does conclude, however, that under the facts of this case, the Respondent is estopped from challenging personal jurisdiction.

The Supreme Court has recognized "the requirement of personal jurisdiction may be intentionally waived, or for various reasons a defendant may be estopped from raising the issue." *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982). "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. Western. Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir.1998). Judicial estoppel may in certain instances be applied *sua sponte*. *See, e.g., Intellivision v. Microsoft Corp.*,784 F.Supp.2d 356, 363 n. 3 (S.D.N.Y.,2011); *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 530 (5th Cir.2000). Judicial estoppel applies to one in privity to a party who has asserted a fact or claim relied on or that a court adjudicated. *See Maitland v. University of Minnesota*, 43 F.3d 357, 364 (8th Cir.1994).

Although the contours of judicial estoppel are not sharply defined,[13] in determining whether to apply judicial estoppel, a court must generally consider the following factors: (1) whether a party's later position is clearly inconsistent with its earlier position, (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled, and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Schaffart v. ONEOK,*

---

[12]The Eighth Circuit in *Mathena v. United States*, 577 F.3d 943, 946 n.3 (8th Cir. 2009), cited to *Lee v. United States*, 501 F.2d 494, 500-01 (8th Cir. 1974), for the proposition that considering the appropriate district for a § 2241 petition is a question of in personam jurisdiction.

[13]*See, e.g., Milton H. Greene Archives, Inc. v. Marilyn Monroe*, 692 F.3d 983, 993 (9th Cir. 2012) ("The Supreme Court has provided little guidance on the contours of judicial estoppel. It has acknowledged that circumstances where the doctrine may apply 'are probably not reducible to any general formulation.'"); *Perry v. Blum*, 629 F.3d 1, 8 (1st Cir. 2010) ("The contours of judicial estoppel are hazy.")

*Inc.*, 686 F.3d 461, 469 (8th Cir. 2012); *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 981 (8th Cir. 2009).

Respondent's position that Mathison must bring this action in a § 2241 action in district court in Colorado is clearly inconsistent with the position taken by his predecessor in the Tenth Circuit that Mathison's *Santos* claim must be "brought pursuant to § 2255 in the district in which the conviction and sentence were imposed." Attachment 2. Respondent's predecessor was successful in persuading the Tenth Circuit that Mathison's challenge to his federal conviction should be raised in a motion to vacate filed in the sentencing court.[14] *Mathison v. Wiley*, 318 Fed. Appx. 650, 2009 WL 784257 (10th Cir. March 26, 2009). Attachment 3. It appears that the current respondent would impose an unfair detriment to now contend that Mathison should raise his claim under the Supreme Court's *Santos* decision when Mathison did that very thing approximately two months after *Santos* was decided, and the respondent consistently maintained he was incorrectly presenting a § 2241 claim in the Colorado district court of confinement.

The Court makes a preliminary determination that judicial estoppel applies to the facts of this case, but will allow the respondent to submit a brief addressing this issue. The Court believes that it is particularly appropriate to apply judicial estoppel in this case since Mathison presents a case of factual innocense to some of his money laundering convictions. The Supreme Court has observed that actual innocence may serve as a gateway through which a petitioner may overcome procedural and other bars to federal habeas review. *See, e.g., McQuiggin v. Perkins*, 133 S.Ct. 1924 (2013) (plea of actual innocence can overcome habeas statute of limitations); *In Re Davis*, 130 S.Ct. 1 (2009) (Serious constitutional issues arise from barring judicial review of certain actual innocense claims.); *Bousley v. United States*, 523 U.S. 614, 622 (1998) (actual innocence may overcome a prisoner's failure to raise a constitutional objection on direct review). In applying judicial estoppel in this case, this Court would be recognizing its obligation "to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the

---

[14] The Tenth Circuit was not presented with and did not consider the relevant facts when it concluded: "And this court agrees with the district court that Petitioner failed to establish that the remedies available to him under § 2255 are inadequate or ineffective. *See Caravalho v. Pugh*, 177 F.3d 1177, 1178 (10th Cir. 1999) ('Courts have found a remedy under 28 U.S.C. § 2255 to be inadequate or ineffective only in extremely limited circumstances.')."

16

extraordinary case." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Further, the application of judicial estoppel in this case would result in considering Mathison's claims in a manner that is consistent with the practical considerations supporting the enactment of Section 2255.[15] Those considerations were an acknowledgment that, unlike the district of the court of confinement, the district of sentencing contains the witnesses, court documents, prosecutors and defense attorneys crucial to a collateral review. The jury trial in this case, over which this Court presided, commenced on May 20, 1997, and ended on June 5, 1997. The United States Attorney's office for the District of South Dakota recently delivered six boxes of exhibits from the trial. In addition, documents from the U.S. Probation Office concerning the sentencing of Mathison are located within this district.

In a number of cases in which habeas actions under the savings clause have been transferred to the district where the sentencing court is located, the courts have recognized that the sentencing court is better equipped to consider the application for habeas relief. *See In re Nwanze*, 242 F.3d 521, 527 (3rd Cir. 2001) ("better for [petitioner] to obtain relief under *Bailey* from the sentencing court rather than from the court in the district of confinement as we have some doubt as to whether the latter court could resentence on the remaining counts," and "only the sentencing court can know what its intentions would have been if it had been sentencing on the remaining counts."); *Short v. Schultz*,

---

[15]Prior to the enactment of Section 2255 the District Courts in whose territorial jurisdiction major federal penal institutions were located were required to handle a large number of habeas actions "far from the scene of the facts, the homes of the witnesses and the records of the sentencing court solely because of the fortuitous concentration of federal prisoners within the district." *United States v. Hayman*, 342 U.S. 205, 214 (1952). The Judicial Conference of the United States then created a committee in 1942 to address the problems created by the increased habeas corpus applications, and recommended proposed bills which created a procedure whereby a federal prisoner might collaterally attack his conviction in the sentencing court. *Id.* at 214-215. A Statement on behalf of the Judicial Conference Committee on Habeas Corpus Procedure was submitted to Congress stressing the practical difficulties encountered in habeas hearings held in the district of confinement rather than in the sentencing court. *Id.* at 215-216. The remedy under the proposed Section 2255 was to broadly cover all situation where a sentence is open to collateral attack. *Id.* at 217. The Supreme Court has characterized Section 2255 as follows: "The very purpose of Section 2255 is to hold any required hearing in the sentencing court because of the inconvenience of transporting court officials and other necessary witnesses to the district of confinement." *Hayman*, 342 U.S. at 220-21.

No. 08–186, 2008 WL 305594, at *3 (D.N.J. Jan. 28, 2008) (sentencing court would have "superior familiarity with the underlying conviction and sentence"). Mathison's case falls under the savings clause, and applying the equitable doctrine of judicial estoppel would accommodate the practical considerations set forth in history of the enactment of 28 U.S.C § 2255 and in the cases transferring savings clause cases.

## CONCLUSION

Mathison presents an actual innocence claim that can be brought under § 2241 through the savings clause of § 2255(e). This Court has made a preliminary determination that based on the facts of this case, Respondent is estopped from challenging in personam jurisdiction and demanding that Mathison's Section 2241 claim be brought in the District of Colorado, the district of his confinement. This Court has also observed that a number of Mathison's money laundering convictions involve payment to his confederates and therefore involve viable *Santos* claims. The Court has determined that it would resentence Mathison to less than it originally sentenced Mathison based on some of his money laundering convictions being vacated.[16] The Court notes that Mathison's current projected release date is December 2, 2014. Mathison argues that merger problems exist with several other of his money-laundering convictions which involve payments to alleged victims. Doc. 3, p.17. Respondent in this case has failed to specifically address the merits of the *Santos* claim. Neither party has addressed how vacating certain money laundering convictions would impact Mathison's sentence at a resentencing. Accordingly,

**IT IS ORDERED**:

1. That the Respondent's Motion to Dismiss for Lack of Jurisdiction (Doc. 6) is denied without prejudice, and Respondent is allowed to brief the issue of judicial estoppel by December 31, 2013;

---

[16]If sentenced under grouping with current guidelines, the guideline range appears to be 168-210 months. Typically, resentencing applies current guidelines but this Court has not found a similar collateral review guidelines application.

2. That the Motion for Bail (Doc. 4) is held in abeyance pending the Court's consideration of Respondent's submission regarding estoppel;

3. That the Motion for Leave to Proceed *in forma pauperis* (Doc. 12) is granted;

4. That on or before January 21, 2014, unless the Court directs otherwise, the parties shall submit simultaneous briefs on which of Mathison's convictions should be vacated, and what impact the same should have on the calculation of a sentence at a resentencing.

Dated this 20th day of December, 2013.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
Deputy